**Chris Mertens, OSB No. 092230**
Mertens Law, LLC
1040 NE 44th Avenue, Suite 4
Portland, OR 97213
Telephone: (503) 836-7673
Facsimile: (503) 206-0115
Chris@MertensCSBLaw.com

**Hope Del Carlo, OSB #002410**
Elemental Law LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-789-7372
Fax: 503-345-6655
hope@elemental.law

Of Attorneys for Leslie Khorenian

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| LESLIE KHORENIAN,<br>  Plaintiff,<br>v.<br><br>LOANDEPOT.COM, LLC, a<br>Delaware Limited Liability<br>Corporation,<br>  Defendant. | Case No.: 2:23-cv-205-XX<br><br>COMPLAINT<br><br>Equal Credit Opportunity Act,<br>15 U.S.C. § 1691e, *et seq.*<br>Oregon Unlawful Trade Practices Act,<br>ORS 646.608, *et seq.*<br>Oregon Elderly Persons and Persons with<br>Disabilities Abuse Prevention Act,<br>ORS 124.100, *et seq.*<br>Oregon Mortgage Lender Law,<br>ORS 86A.151<br><br><br>DEMAND FOR JURY TRIAL |

## PRELIMINARY STATEMENT

1.

This case is about Defendant LoanDepot.com, LLC's financial abuse of plaintiff Leslie Khorenian, a vulnerable disabled person and Oregon consumer. Defendant promised Ms. Khorenian it could get Plaintiff the loan she needed and that Defendant could "do the paperwork right," despite Ms. Khorenian communicating to Defendant's employee her recent denial by another employee of Defendant because she receives rental income from renting a bunkhouse on her rural property.  Ms. Khorenian also communicated her application denial by Cardinal Financial Company for the same reasons as of February 8, 2022. Defendant knew the facts that would prevent Plaintiff from qualifying for the loan from the start, yet it unfairly took and kept $23.05 for a credit report fee and $495.00 deposit for the appraisal. For four months, Ms. Khorenian relied upon LoanDepot's repeated promises and reassurances that they could get her the loan she needed. At last, months later, in May, 2022, after completing the appraisal and after the Defendant allowed the rate lock to expire in an environment of rapidly increasing interest rates, LoanDepot declined Ms. Khorenian's loan application.

2.

This is an action for money damages brought by Ms. Khorenian pursuant to the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq*., the Oregon Unlawful Trade Practices Act ("UTPA"), ORS 646.608, *et seq.,* and the Oregon Elderly Persons and Persons with Disabilities Abuse Prevention Act, ORS 124.100 & 124.110.

3.

The ECOA was passed by Congress prohibit discrimination in connection with credit transactions.  Pub. L. 93-495, § 502, 88 Stat. 1525 (Oct.  28, 1974, from Congressional Findings and Statement of Purpose). As part of ECOA's statutory regulation, a creditor must inform an applicant about the action taken on an application within thirty days of the application. 15 U.S.C. § 1691(d)(1); Regulation B, 12 C.F.R. § 202.9(a)(1);  *Dufay v. Bank of Am. N.T. S.A.,* 94 F.3d 561, 564 (9th Cir. 1996). The ECOA is a strict liability statute and attempted compliance is not sufficient. *Pierce v. Citibank*, 843 F. Supp. 646 (D. Or. 1994) (notice to spouse not sufficient). Like other federal consumer statutes, the ECOA is enforced via private attorneys general bringing actions for civil liability.

4.

The Oregon UTPA transformed the public into "private attorneys general" by authorizing consumers who have suffered an ascertainable loss of money or property as a result of violations of the statute to sue in their own names and recover damages. The UTPA is to be interpreted liberally in favor of consumers. *See Denson v. Ron Tonkin Gran Turismo, Inc*., 279 Or. 85, 90 n.4, 566 P.2d 1177 (1977)(discussing legislative history of Oregon's enactment of the UTPA).

5.

The Oregon Elderly Persons and Persons with Disabilities Abuse Prevention Act provides for private rights of action for vulnerable Oregonians, including the elderly and persons with disabilities. The vulnerable person may sue to recover treble

damages from a person who violates the statute by wrongfully taking money or property. *See* ORS 124.110.

## JURISDICTION

6.

Jurisdiction is conferred on this Court pursuant to 15 U.S.C. § 1691e(f) and generally pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Unlawful Trade Practice ("UTPA") and Oregon Elderly Persons and Persons with Disabilities Abuse Prevention Act ("EPPDAPA") claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the federal claims that they form part of the same case or controversy.

7.

Personal jurisdiction over defendant LoanDepot.com, LLC ("LoanDepot") is proper pursuant to Fed. R. Civ. P. 4(k).

8.

Venue is proper before this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred within this district, and Plaintiff Leslie Khorenian ("Ms. Khorenian") resides in this district.

## PARTIES

9.

Plaintiff Ms. Khorenian is a natural person and a resident of Crook County in the State of Oregon. Ms. Khorenian is a widow, a mother, unmarried, a survivor of

very invasive cancer, and as a result of intense and invasive treatments for the cancer, a vulnerable person with disabilities.

10.

LoanDepot.com, LLC, is a Delaware limited liability company authorized to do business in Oregon, doing business as LoanDepot.com and/or LoanDepot, LLC.

11.

At all times pertinent herein LoanDepot was a non-bank mortgage lender who regularly extended credit and regularly arranged for the extension of credit.

12.

At all times pertinent herein LoanDepot was a creditor as statutorily defined by ECOA, in 15 U.S.C. § 1691a(e).

## **FACTUAL ALLEGATIONS**

13.

Ms. Khorenian purchased her 20-acre ranch property outside of Prineville Oregon ("homestead") after her husband passed away nearly 20 years ago, where she raised her two sons.

14.

Ms. Khorenian fought a long, grueling battle with an invasive cancer, and the cancer ultimately went into remission.

15.

The cancer treatments left Ms. Khorenian with several complications that worsened over the years, including degenerative nerve disease of her small nerves,

neuropathy, migraines, ocular disturbances, and brain fog, among other ongoing health problems.

16.

In 2018, Ms. Khorenian qualified for disability income from the Social Security Administration because of her worsening and persistent physical and mental impairments.

17.

Ms. Khorenian's persistent health impairments meant she needed to pay for additional help on the ranch.

18.

Around the same time, Ms. Khorenian also incurred substantial attorney fees to successfully defend a forced easement action against her property. Ms. Khorenian did not have a way to pay for the attorney fees, but the homestead was unencumbered.

19.

To pay for these debts, Ms. Khorenian borrowed a private loan secured by a first deed of trust against the homestead ("Hard Money Loan"). The Hard Money Loan comes due in full in November, 2023.

20.

Ms. Khorenian knew she needed to refinance the Hard Money Loan, and also to roll in some credit card debt incurred from upkeep on the homestead.

21.

Ms. Khorenian's disability income was supplemented by a small amount of retirement from her late husband, and rental income from renting out an outbuilding/bunkhouse on her homestead.

22.

In January 2022, Ms. Khorenian applied for a mortgage with Cardinal Financial ("Cardinal"). Cardinal promptly denied her application for a conventional refinance mortgage due to the rental income coming from the bunkhouse located on the homestead.

23.

Discouraged but determined, Ms. Khorenian submitted an inquiry with LoanDepot at the end of January, 2022. Almost immediately, LoanDepot's loan originator told Ms. Khorenian that she would not qualify for a loan with it, for the same reason that Cardinal had declined her application.

24.

In February 2022, LoanDepot solicited Ms. Khorenian again, though it had just told her she was ineligible to receive a loan from it. LoanDepot promised to give her options and to search multiple programs to find the best option for Ms. Khorenian.

25.

On or about February 11, 2022, Ms. Khorenian spoke with Raana Hasnat, a loan originator and employee and agent of LoanDepot.

26.

Ms. Khorenian told Raana Hasnat the details of her income, including that she had been denied by Cardinal because of the income from renting the bunkhouse, and that initial inquiry with LoanDepot had yielded the same kind of denial.

27.

Raana Hasnat told Ms. Khorenian that the prior LoanDepot employee had looked at her application incorrectly, and that "they were stupid" and that LoanDepot and Raana Hasnat could make the loan work.

28.

LoanDepot did not tell Ms. Khorenian that the bunkhouse rental income disqualified her from a conventional refinance until over four months later.

29.

LoanDepot did not tell Ms. Khorenian that the bunkhouse income could not be considered in her loan evaluation.

30.

Upon information and belief, LoanDepot did not evaluate Ms. Khorenian for the best loan option for her, including a farm credit loan.

31.

Upon information and belief, LoanDepot made statements to Ms. Khorenian that she qualified for a loan when it knew or should have known Ms. Khorenian did not qualify.

32.

On or About February 21, 2022, LoanDepot conditionally approved Ms. Khorenian for a $150,000 conventional fixed rate Cash-Out Refinance loan with a locked interest rate of 3.5%.

33.

Ms. Khorenian relied on LoanDepot's statements and paid LoanDepot $495.00 for an appraisal deposit and $23.05 for a credit report fee.

34.

Ms. Khorenian promptly complied with all requests for documents and by March 10, 2022, all documents were provided to LoanDepot and the title company.

35.

LoanDepot made Ms. Khorenian wait for an appraiser and would not allow her to find another independent appraiser.

36.

On or about March 21, 2022, LoanDepot extended the 3.5% interest rate lock to April 12, 2022.

37.

On or about March 30, 2022, still waiting for an appraisal, LoanDepot again acknowledged that it had everything it needed and sent Ms. Khorenian's loan application to underwriting.

38.

On or about April 4, 2022, LoanDepot again extended the rate lock to April 27, 2022.

39.

On or about April 18, 2022, Loan Depot again extended the rate lock to May 12, 2022.

40.

On or about Thursday April 28, 2022, LoanDepot contacted Ms. Khorenian again acknowledging that the insurance documents it had in its file provided to it in February 2022 showed two dwelling units.

41.

On or about Thursday April 28, 2022, Ms. Khorenian confirmed that the second dwelling unit was a bunkhouse on the ranch property that she rented out, as she had previously confirmed with LoanDepot on February 11, 2022.

42.

On May 2, 2022 LoanDepot did not communicate any problems to Ms. Khorenian and acknowledged the appraisal was scheduled for May 3, 2022.

43.

On May 3, 2022, the appraisal inspection was completed.

44.

On or about May 5, 2022, LoanDepot confirmed in writing to Ms. Khorenian that the refinance should be completed after receiving the appraisal, acknowledging that the rate lock would expire on May 15, 2022.

45.

On May 6, 2022, the appraisal report was provided to LoanDepot and Ms. Khorenian. The homestead was valued at $665,000 using the sales comparison approach and $601,427 by the cost approach.

46.

On May 10, 2022, LoanDepot issued closing disclosures to Ms. Khorenian.

47.

On May 18, 2022, after letting the rate lock expire, LoanDepot sent an email to Ms. Khorenian informing her that LoanDepot rejected her loan application.

48.

Upon information and belief, LoanDepot did not deny Ms. Khorenian's loan for anything related to the appraisal.

49.

Ms. Khorenian was confused, upset, and distraught at being rejected after being told she would qualify time and again for months.

50.

In her distress, Ms. Khorenian called LoanDepot to get answers and talked to, upon information and belief, "Alex" with LoanDepot's customer service who told Ms. Khorenian that LoanDepot was sorry and that "it was LoanDepot's fault."

51.

Mortgage rates almost doubled over the four months that LoanDepot strung Ms. Khorenian along without giving her loan application a yes or no.

52.

Due to the rising market rates, Ms. Khorenian could no longer afford a mortgage to meet her needs because she reasonably relied on LoanDepot's representations over four months that LoanDepot had locked an interest rate for Ms. Khorenian and told her it was going to get her the loan she needed.

53.

Ms. Khorenian's current Hard Money Loan requires a final lump-sum payment in November 2023 that Ms. Khorenian will be unable to afford without a refinance at mortgage rates comparable to those in January 2022 rates. Without a refinanced loan she may be forced to sell her homestead.

54.

Ms. Khorenian has suffered extreme stress and episodes of panic as a result of having her chance at refinancing being taken from her by LoanDepot's intentional or reckless misrepresentation about her qualification for the loan.

55.

Ms. Khorenian was scared, worried, and upset that she could lose her homestead to foreclosure or need to file bankruptcy, or ultimately have to sell her family home because LoanDepot squandered her refinance window by stringing her along with a false promise that she qualified for the refinance loan.

FIRST CLAIM FOR RELIEF—Equal Credit Opportunity Act (ECOA)

56.

Ms. Khorenian individually restates and incorporates herein all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

57.

Ms. Khorenian was an applicant for credit within the meaning of 15 U.S.C. § 1691a(b) and Regulation B, 12 C.F.R.  202.2(e). She applied for a cash-out refinance mortgage loan with LoanDepot.

58.

LoanDepot is a creditor and the above-referenced mortgage loan application constituted an application for credit as defined by the ECOA, 15 U.S.C. § 1691a(b) and Regulation B, 12 C.F.R. § 202.2.

59.

Ms. Khorenian is a member of protected classes under ECOA based on her sex, marital status, and as a person who receives Social Security Disability income.

60.

The notice requirements of ECOA, found at 15 U.S.C. § 1691(d)(1), provide that "within thirty days . . . after receipt of a completed application for credit, a creditor shall notify an applicant of its actions on the application." 15 U.S.C. § 1691(d)(2) provides that "each applicant against whom an adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(6) defines "adverse action" as a "denial or revocation of credit, a change in the terms of an existing credit arrangement or refusal to grant credit in substantially the same amount or on substantially the terms requested."

61.

Ms. Khorenian provided the defendant with a completed loan application for credit, evidenced by LoanDepot sending the loan to underwriting on or about March 30, 2022.

62.

LoanDepot failed to evaluate and make a determination on the plaintiff's application within 30 calendar days of application as required by ECOA, denying the loan on May 18, 2022.

63.

LoanDepot failed to timely deny the loan on facts in its possession since February 11, 2022.

64.

Defendant's failure to notify plaintiff either of the acceptance or incompleteness of her application, or of the adverse action taken on her application for credit within 30 days from receipt of her completed application constitutes a substantive violation of ECOA's notice requirements.

65.

Because of the above-referenced violations of the ECOA and Regulation B and in accordance with 15 U.S.C. § 1691e, defendant is liable to plaintiff for economic and non-economic damages described above, punitive damages not to exceed $10,000.00, and costs and reasonable attorney fees.

SECOND CLAIM FOR RELIEF—Oregon Elderly Persons and Persons with
Disabilities Abuse Prevention Act
ORS 124.110

66.

Ms. Khorenian individually restates and incorporates herein all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

67.

Ms. Khorenian's ongoing and persistent symptoms of her physical and mental impairment as described above are likely to continue without substantial improvement for the foreseeable future, no fewer than 12 months and likely until the rest of her life, as set forth in ORS 124.100 (1)(d)(A).

68.

Ms. Khorenian's ongoing physical and mental impairment prevent substantially all of her of her ordinary duties in running the ranch on her homestead, duties that an able-bodied ranch owner would be able to perform, as set forth in ORS 124.100(1)(d)(B), thus rendering Ms. Khorenian a "Person with a disability" as defined by ORS 124.100(1)(d).

69.

Ms. Khorenian's physical and mental impairments caused her to have to give up the animals she kept on her ranch, and even get help with the regular upkeep and maintenance of the property.

70.

Because of Ms. Khorenian's physical and mental impairments, at all times relevant to the claims asserted herein, Ms. Khorenian was susceptible to coercion, persuasion, financial, and emotional injury because of her physical and mental impairments, and is therefore a vulnerable person as set forth in ORS 124.100(1)(e).

71.

LoanDepot wrongfully took and appropriated Ms. Khorenian's money when it took the $495.00 for the appraisal deposit and $23.05 for the credit report fee it took as a result of misrepresenting that LoanDepot failed to properly and timely deny.

72.

LoanDepot wrongfully took and appropriated Ms. Khorenian's property when it took away her right to refinance the Hard Money Loan into a mortgage she could afford.

73.

LoanDepot's possession and control over Ms. Khorenian's money and property was acquired from Ms. Khorenian in whole or in part by Defendant or someone acting on Defendant's behalf or in concert with Defendant.

74.

LoanDepot's financial abuse caused Ms. Khorenian to suffer economic damages including Defendant's charges for appraisal, for credit reports, for mailing, for excess interest paid to her hard money lender, and for extra measurable expenses associated with trying to resolve her Hard Money Loan coming due in November 2023.

75.

LoanDepot's financial abuse caused Ms. Khorenian to experience pain and suffering, including but not limited to injury to her feelings, fear, anxiety, powerlessness, loss of control, discomfort, illness and other physical pain, inconvenience, interference with normal and usual activities, stress, humiliation, embarrassment, loss of self-esteem, frustration, sadness, grief, and loss of

reputation. Ms. Khorenian is entitled to non-economic damages in an amount to be proven at trial but not less than $100,000.00. Such damages are ongoing.

76.

Ms. Khorenian is entitled to treble damages pursuant to ORS 124.100(2)(a) and (b).

77.

Ms. Khorenian is entitled to her costs and expenses incurred in relation to this action, including reasonable attorney fees, under ORS 124.100(2)(c).

THIRD CLAIM FOR RELIEF—Unlawful Trade Practices Act
ORS 646.638 & ORS 646.608(e), (g), and (k)

78.

Ms. Khorenian individually restates and incorporates herein all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten for each of the following counts below in support of her Third Claim for Relief.

79.

The loan application at issue in this case was made for personal, family, or household purposes.

THIRD CLAIM—*Count One* ORS 646.608(e)

80.

LoanDepot represented that it would get Ms. Khorenian the best loan for her.

Page 18 of 27 − COMPLAINT (ECOA UTPA and EPPDAPA)

81.

LoanDepot represented that it had a loan to meet Ms. Khorenian's needs.

82.

LoanDepot, through its employees and agents, represented that Ms. Khorenian could qualify for a loan and LoanDepot could make it work.

83.

LoanDepot represented that Ms. Khorenian's income was sufficient to approve her loan application.

84.

LoanDepot represented that it would approve her loan application promptly as soon as the appraisal came in.

85.

LoanDepot's representations regarding the characteristics and qualities of its services were false and misleading. LoanDepot knew or should have known its representations were false and misleading.

86.

Ms. Khorenian suffered an ascertainable loss of money or property as a result of Defendant's false or misleading misrepresentations by paying Defendant for appraisal and report fees, paying postage fees, lost time, gas driving to town, and additional expenses for continuing to pay the higher interest on her Hard Money Loan.

THIRD CLAIM—*Count Two* ORS 646.608(g)

87.

LoanDepot represented to Ms. Khorenian that its loans were ones Ms. Khorenian qualified for based on her income circumstances.

88.

Defendant's representations of the standard, quality, or grade of the loans and services were false or misleading.

89.

Ms. Khorenian suffered an ascertainable loss of money or property as a result of Defendant's false or misleading misrepresentations paying Defendant for appraisal and report fees, paying postage fees, lost time, gas driving to town, and additional expenses for continuing to pay the higher interest on her Hard Money Loan.

THIRD CLAIM—*Count Three* ORS 646.608(k)

90.

LoanDepot made false or misleading representations concerning the availability of credit to Ms. Khorenian by telling her she would qualify and stating it had the right type of loan for her needs.

91.

Ms. Khorenian suffered an ascertainable loss of money or property as a result of Defendant's false or misleading misrepresentations paying Defendant for appraisal and report fees, paying postage fees, lost time, gas driving to town, and additional expenses for continuing to pay the higher interest on her Hard Money Loan.

THIRD CLAIM—*As To All Counts*

92.

Defendant's use or employment of the unlawful trade practices detailed above in this Third Claim For Relief were willful because Defendant knew or should have known its conduct violated the Act.

93.

Defendant's unlawful trade practices caused Ms. Khorenian to suffer economic damages including appraisal and report fees, paying postage fees, lost time, gas driving to town, and additional expenses for continuing to pay the higher interest on her Hard Money Loan, in a total amount to be proven at trial.

94.

Ms. Khorenian is entitled to the greater of her actual damages or $200.00 in statutory damages for each time Defendant made use of or employed an unlawful trade practice.

95.

Ms. Khorenian is entitled to her costs and expenses incurred in relation to
this action, including reasonable attorney fees under ORS 646.638.

THIRD CLAIM—*As to All Counts* Punitive Damages

96.

LoanDepot acted with malice or showed a reckless and outrageous
indifference to a highly unreasonable risk of harm and acted with a conscious
indifference to the health, safety, and welfare of others thereby requiring
LoanDepot to pay punitive damages in an amount to be determined by the jury to
be reasonable.

97.

LoanDepot acted with malice by wrongfully and intentionally telling
consumers applying for loans that the consumer can qualify when there is express
information that disqualifies the applicant.

98.

LoanDepot acted with intentional disregard for the interests of its clients
when it told Ms. Khorenian she qualified for a loan and LoanDepot could make it
work, despite having from the outset information showing Ms. Khorenian did not
qualify.

99.

Defendant acted intentionally and wrongfully, or at least with reckless
disregard to the interests of loan applicants, including Ms. Khorenian, when it

failed to promptly deny Ms. Khorenian's application and continued to keep it pending for over four months while telling Ms. Khorenian she would qualify for a loan upon the appraisal.

### 100.

Defendant's intentional and wrongful actions were without just cause or excuse.

### 101.

Defendant's intentionally wrongful business practices demonstrated outrageous indifference to a highly unreasonable risk that a prospective loan applicant might be harmed by its wrongful business practices.

### 102.

Defendant's intentionally wrongful business practices demonstrated Defendant's conscious indifference to the welfare of its customers, specifically Ms. Khorenian, a vulnerable person.

### 103.

Defendant's wrongful and intentional business practices and systemic conduct evidence a high degree of social irresponsibility.

### 104.

Defendant's intentional and wrongful actions caused Ms. Khorenian to suffer harm of paying unnecessary fees and to miss her window for refinancing her home, causing her additional costs and expenses, as well as causing emotional and physical harm in the form of headaches, anxiety, and depression.

FOURTH CLAIM FOR RELIEF— Oregon Mortgage Lender Law
ORS 86A.095-.198, *et seq.*

105.

Ms. Khorenian individually restates and incorporates herein all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

106.

LoanDepot is a mortgage broker or banker, as defined by ORS 86A.100.

107.

Ms. Khorenian's mortgage loan transaction with LoanDepot constituted a "residential mortgage transaction" as defined by ORS 86A.100(8), and LoanDepot was required to be licensed under ORS 86A.103 to engage in this transaction.

108.

As described particularly in the foregoing paragraphs, LoanDepot transacted business as a mortgage banker or mortgage broker by means of untrue statements of a material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, in violation of ORS 86A.151(b)(A).

109.

Upon information and belief, during the four months in 2022 when LoanDepot failed to give clear, timely information to Ms. Khorenian about the approval or denial of her loan application, LoanDepot employed a device, scheme or artifice to defraud Ms. Khorenian, or knowingly made untrue statements of material fact or

omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in an act, practice or course of business which operated as a fraud or deceit, in violation of ORS 86A.154(1)-(3).

110.

As a result of defendant's violations of the Oregon Mortgage Lender Law, Ms. Khorenian suffered ascertainable losses as described above. She seeks damages in an amount equal to her ascertainable losses described above, pursuant to ORS 86A.151(2), and attorney fees pursuant to ORS 86A.151(7).

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against defendant LoanDepot.com, LLC, as follows:

1) On the First Claim for Relief (Equal Credit Opportunity Act):

    a)  Economic damages in an exact amount to be proven at trial, together with prejudgment interest;

    b)  Non-economic damages in an exact amount to be proven at trial, together with prejudgment interest;

    c)  Punitive damages not to exceed $10,000.00;

    d)  Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1691e(d).

2) On the Second Claim for Relief (Financial Abuse of Vulnerable Person):

    a)  Economic damages in an exact amount to be proven at trial, together with prejudgment interest;

    b)  Non-economic damages in an exact amount to be proven at trial, together with prejudgment interest;

    c)  Treble damages on any sums awarded pursuant to ORS 124.100(2)(a)&(b).

    d)  Reasonable attorney fees and costs, pursuant to ORS 124.100(2)(c).

3) On the Third Claim for Relief (Oregon Unfair Trade Practices Act);

    a)  A declaratory judgment that Defendant's conduct violated the UTPA;

    b)  The greater of Plaintiff's actual damages including economic and noneconomic damages or $200.00 pursuant to ORS 646.638(1);

    c)  Punitive damages pursuant to ORS 646.638(1);

    d)  Costs of litigation and reasonable attorney fees incurred by Ms. Khorenian in prosecuting this case, pursuant to ORS 646.638(3);

4) On the Fourth Claim for Relief (Oregon Mortgage Lender Law);

    a)  Ascertainable loss of money and property in an exact amount to be proven at trial, together with prejudgment interest pursuant to ORS 86A.151(2);

    b)  Reasonable attorney fees and costs, pursuant to ORS ORS 86A.151(7);

4) For all such further relief that the Court may deem just and appropriate.

//

//

//

//

//

//

## <u>JURY DEMAND</u>

Ms. Khorenian is entitled to and hereby respectfully demands a trial by jury.


Dated this 10th day of February, 2023.

**Mertens Law, LLC**

/s/ Chris Mertens
Chris Mertens, OSB #092230
Mertens Law, LLC
4411 NE Tillamook Street
Portland, Oregon 97213
Tel: 503.836.7673
Fax: 503.213.6000
Chris@MertensCSBLaw.com

/s/ Hope Del Carlo
Hope Del Carlo, OSB #002410
Elemental Law LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655
hope@elemental.law

Of Attorneys for the Plaintiff